UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

INGA RICHARDSON,

                        Plaintiff,

          -v-

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

21-CV-11146-LTS

---

### MEMORANDUM ORDER

Plaintiff Inga Richardson ("Plaintiff" or "Ms. Richardson") brings the above-captioned action pursuant to 42 U.S.C. section 405(g) of the Social Security Act, seeking judicial review of the Commissioner of Social Security's denial of her application for disability insurance benefits. (Docket entry no. 1 ("Compl.").)  Ms. Richardson contends that the decision of the Administrative Law Judge ("ALJ"), dated March 22, 2021, is erroneous because it is not supported by substantial evidence in the record and/or is contrary to applicable law. (Id. ¶ 13.)

The parties have cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (See docket entry no. 13 ("Pl. Mot."); docket entry no. 15 ("Comm'r Mot.").)  The Court has reviewed carefully the parties' submissions in connection with their Rule 12(c) motions and, for the following reasons, Plaintiff's motion is denied, the Commissioner's motion is granted, and the case is dismissed.

<u>Background</u>[1]

<u>Procedural History</u>

On July 21, 2017, Plaintiff applied for disability insurance benefits, initially alleging a disability onset date of April 28, 2017, due to left shoulder injury, neck injury, numbness in her left fingers, high blood pressure, kidney stones, anxiety, and depression. (R. 113, 115, 132-46, 331-37, 394.)[2] Ms. Richardson was 59 years old on the claimed onset date and had recently retired after working for over twenty years as a fraud investigator with the New York City Department of Social Services. (R. 65, 115.) Following a hearing, ALJ John Loughlin issued a partially favorable decision on September 16, 2019, finding Plaintiff disabled as of October 19, 2018. (R. 146.) Ms. Richardson sought review of that decision and, on November 24, 2020, the Appeals Council affirmed the ALJ's disability finding as of October 19, 2018. (R. 158-59.) The Council, however, remanded the case to assess further Ms. Richardson's

---

[1] The Court notes that the parties' memoranda in support of their motions for judgment on the pleadings provide summaries of the medical evidence contained in the administrative record. (<u>See</u> Pl. Mot. 2-13; Comm'r Mot. 2-7.) Having examined the administrative record, the Court concludes that the parties have accurately stated its contents, even if they occasionally focus on different portions of the record. Moreover, Plaintiff expressly declined her opportunity to file a reply, <u>see</u> docket entry no. 16, and the Court therefore adopts the parties' summaries as complete for purposes of the issues raised in this action. <u>See</u> <u>Collado v. Kijakazi</u>, No. 20-CV-11112-JLC, 2022 WL 1960612, at *2 (S.D.N.Y. June 6, 2022) (adopting parties' summaries of medical evidence where parties did not dispute recitation of relevant facts); <u>Scully v. Berryhill</u>, 282 F. Supp. 3d 628, 631 (S.D.N.Y. 2017) (adopting parties' summaries where they were "substantially consistent with each other" and neither party objected to the opposing party's summary). The medical evidence in the administrative record is referenced in the discussion below to the extent necessary to address issues raised in the pending cross-motions. Finally, because Plaintiff only challenges the ALJ's assessment of her mental impairments, (<u>see</u> Pl. Mot. 14-18), medical evidence concerning her physical impairments is mentioned only where relevant.

[2] "R." refers to pages of the certified administrative record filed by the Commissioner at docket entry no. 9.

alleged mental impairments prior to the established onset date and determine whether she was disabled prior to October 19, 2018.  (Id.)

Ms. Richardson then appeared and testified at a hearing before ALJ Elias Feuer on February 25, 2021.  (R. 57-100.)  Following a colloquy in which the ALJ indicated that Ms. Richardson's records did not appear to contain any documentation of a "serious mental health impairment" or "any mental health treatment" between April 28, 2017 (the alleged onset date and date of her retirement) and October 17, 2017 (the date of her hospitalization for, among other things, chest pain and suicidal ideation), Ms. Richardson, under the advice of counsel, amended her alleged onset date to October 18, 2017.  (R. 94-97.)

The ALJ Decision

On March 22, 2021, ALJ Feuer issued an unfavorable decision, finding Plaintiff not disabled during the relevant period—October 18, 2017, through October 18, 2018.  (R. 20-21.)  On October 25, 2021, ALJ Feuer's decision became the Commissioner's final decision after the Appeals Council denied Plaintiff's request for review.  (R. 1-6.)

Before undertaking the five-step analysis mandated by 20 C.F.R. § 404.1520(a)(4)(i)-(v), the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2022.  (R. 12).  The ALJ then proceeded to the required five-step analysis.[3]

---

[3]   The Second Circuit has described the five-step sequential process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider

At step one, see 20 C.F.R. § 404.1520(a)(4)(i), the ALJ found that Ms. Richardson had not engaged in substantial gainful activity since October 18, 2017, the amended alleged onset date. (Id.) At step two, see 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521, 404.1522, he found that Plaintiff's cervical degenerative disc disease and asthma were "severe" impairments (R. 12), but that her anxiety and depression were "nonsevere" impairments, in that, "considered singly and in combination, [they did] not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." (R. 14.) In making his finding that Ms. Richardson's mental impairments were non-severe, the ALJ analyzed the so-called Paragraph B criteria.[4] See 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00(E)(1)-(4).

---

the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity ["RFC"] to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999) (emphasis added). The regulations define residual functional capacity ("RFC") as follows: "Your impairments(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1).

[4]  The degree of functional limitation is rated in "four broad functional areas," including the claimant's ability to: (i) "[u]nderstand, remember, or apply information"; (ii) "interact with others"; (iii) "concentrate, persist, or maintain pace"; and (iv) "adapt or manage [her]self." Id. § 404.1520a(c)(3). The degree of limitation in each area is rated on a five-point scale: "None, mild, moderate, marked, and extreme." Id. § 404.1520a(c)(4). If the claimant's limitations are rated "none" or "mild" in all four functional areas, her mental impairment will generally be found "not severe," meaning that it does not cause "more than a minimal limitation in [the claimant's] ability to do basic work activities." Id. § 404.1520a(d)(1). If the claimant's limitations are greater than "mild," such that her mental impairment is deemed "severe," the Commissioner must then "determine if [the impairment] meets or is equivalent in severity to a listed mental disorder." Id. § 404.1520a(d)(2).

In the first area—understanding, remembering, or applying information—the ALJ found a "mild limitation." (R. 14.)  He relied on (1) Plaintiff's PHQ-9 questionnaires from December 2017 through August 2018, which suggested mild or minimal depression[5]; and (2) Plaintiff's testimony that she "reads regularly, including the bible." (Id.)  In the second area, interacting with others, the ALJ found "no limitation." (Id.)  He relied on (1) Plaintiff's report during her hospitalization from October 18, 2017, to October 20, 2017 (for chest pain and suicidal ideation) that she attended church and comedy shows and went to the beach when not sluggish; and (2) Plaintiff's testimony that she attends church regularly and is able to travel by public transportation and shop for groceries. (Id.)  In the third area—concentrating, persisting, or maintaining pace—the ALJ found a "mild limitation." (Id.)  He relied on Plaintiff's report of "good concentration" during her hospital stay, despite experiencing suicidal ideation beforehand, and on Plaintiff's testimony that she read regularly, including the bible. (Id.)  In the fourth and final area, adapting and managing oneself, the ALJ found a "mild limitation." (Id.)  He cited as support Plaintiff's statements that she lived with her husband, listened to the radio, and read; her report that, though unable to drive due to her neck pain, she read and attended church regularly; and her report that she had no trouble with personal care, making sandwiches, feeding her cat, going out to eat, traveling by public transportation, and shopping for groceries with her husband two to three times a month. (Id.)

Next, at step four, the ALJ concluded that Ms. Richardson had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),

---

[5]  A PHQ-9 questionnaire is a nine-item patient questionnaire used to assess depression. See Smith v. Comm'r of Soc. Sec., No. 20-CV-08547-JCM, 2022 WL 421136, at *2 n.2 (S.D.N.Y. Feb. 11, 2022).  PHQ-9 scores of 5, 10, 15 and 20 represent mild, moderate, moderately severe, and severe depression, respectively.  See Sanabria v. Comm'r of Soc. Sec., No. 20-CV-00906-DF, 2022 WL 976874, at *4 n.12 (S.D.N.Y. Mar. 31, 2022).

with no nonexertional limitations. (R. 16.) Although mental limitations are absent from the ALJ's RFC determination, the ALJ wrote two paragraphs in the narrative portion discussing the opinions of several consultative examiners about Plaintiff's mental impairments. (R. 19.)

For example, the ALJ evaluated the opinion of consultative examiner Haruyo Fujiwaki, Ph.D., which he expressly acknowledged had served as the basis for the Appeals Council's remand of the case for further assessment of Ms. Richardson's mental impairments after the initial, partially favorable ALJ decision. (Id.) Dr. Fujiwaki examined Ms. Richardson on October 30, 2017, roughly ten days after she was discharged from her hospital stay. (R. 593-96.) He opined that Ms. Richardson can understand, remember or apply simple directions and instructions; is moderately limited in interacting adequately with supervisors, coworkers, and the public; and moderately limited in regulating emotions, controlling behavior and maintaining well-being; and concluded that these limitations are not significant enough to interfere with the claimant's ability to function on a daily basis. (R. 19.) Dr. Fujiwaki diagnosed Ms. Richardson with unspecified depressive disorder and unspecified anxiety disorder. (R. 595.)

The ALJ found Dr. Fujiwaki's opinion unpersuasive because "there is minimal evidence of [mental health] treatment, the opinion appears based on the claimant's subjective reports, and is unsupported [by] and inconsistent with, the claimant's treatment records."[6] (R. 19.) In particular, the ALJ discussed Ms. Richardson's hospitalization records, which indicated

---

[6]  Under the umbrella heading of "Mental Status Examination," Dr. Fujiwaki wrote, in full: "Demeanor and responsiveness to questions was cooperative. Manner of relating, social skills, and overall presentation was adequate." (R. 594.) Under the "mood" subheading, he wrote: "Dysthymic. The claimant reported feeling depressed." (Id.) Under the "consistency" subheading, he wrote: "The results of the mental status evaluation are not consistent with the claimant's vocational history. On mental status testing, the claimant was unable to perform serial 7s, which is inconsistent with her work history. Reportedly she worked as a fraud investigator for 20 years until April 2017." (R. 595.)

that she was admitted for chest pain and reported suicidal ideation and was put on a 1:1 watch. (Id.) Ms. Richardson was reevaluated the following day, when her mental status examination was within normal limits, except that she reported being sad, and her 1:1 watch was discontinued. (Id.) The ALJ noted that she was discharged the next day and was not prescribed any psychotropic medication, but she was referred to psychiatric care, although there is no evidence that she followed up on the referral. (Id.) He also found Dr. Fujiwaki's opinion inconsistent in that (1) Ms. Richardson's numerous "PHQ-9 examinations, an objective measure of depression, were mild to minimal between December 12, 2017 and August 8, 2018"; and (2) Plaintiff's reports and testimony indicated that she regularly read, participated in bible classes, and attended church. (Id.)

In another example, the ALJ found the December 2017 opinion, which followed Dr. Fujiwaki's examination, of state agency consultant L. Serbonich, Psy. D.—that Plaintiff's depression was non-severe—to be "convincing and persuasive" as it was "consistent with and supported by the objective clinical and diagnostic findings at the time of his record review." (Id.) In particular, the ALJ noted that "[m]edical records from prior to the established onset date regularly reflect no depressed mood, and indicate no mental health treatment, supporting his opinion," and that the PHQ-9 screeners, which indicated only mild or minimal symptoms of depression, were "consistent with his opinion." (Id.)

At the final step, see 20 C.F.R. § 404.1520(a)(4)(iv), ALJ Feuer determined that Ms. Richardson could perform her past relevant work as a clerical worker, "a light exertion level

semi-skilled job" actually "performed at a sedentary exertional level." [7] (R. 20.) He therefore concluded that she was not disabled from October 18, 2017, through October 18, 2018.

The Parties' Positions

Plaintiff argues that the ALJ erred because his RFC determination was not supported by substantial evidence. (Pl. Mot. at 14.) First, according to Plaintiff, the ALJ failed to incorporate mental impairments into his RFC determination, and "assessed no mental limitations." (Id. at 15.) Second, Plaintiff argues that the ALJ failed to properly weigh the opinion of Dr. Fujiwaki, inappropriately discounting it as "unpersuasive" in light of the record. (Id. at 15-17.)

The Commissioner contends that the ALJ's decision is supported by substantial evidence, in that the ALJ correctly incorporated his step two findings—that Ms. Richardson's mental health limitations were "mild" and her impairments "nonsevere"—into his RFC assessment, and properly discounted the opinions of Dr. Fujiwaki in light of the record. (Comm'r Mot. at 11-25.)

The Court concurs with the Commissioner on both points.

---

[7] During the second hearing, Plaintiff testified that, for the last six or seven months prior to her retirement, she no longer performed the investigative duties of her job, and was limited to carrying out the clerical portions of her role. (R. 73-86.) Based on this testimony, the vocational expert ("VE") testified that while Ms. Richardson's past relevant work was as an investigator for most of her twenty-year employment, her actual duties for the last six months or so were more accurately described as those of a clerical worker—a semi-skilled job generally performed at the light level but that was actually performed by Plaintiff at the sedentary level. (R. 86-88.)

DISCUSSION

Standard of Review in a Social Security Action

"Judicial review of the denial of disability benefits is narrow" and the Court "will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record or are based on an erroneous legal standard." Koffsky v. Apfel, 26 F. Supp. 2d 475, 478 (E.D.N.Y. 1998) (citing Bubnis v. Apfel, 150 F.3d 177, 179-81 (2d Cir. 1998)); see also 42 U.S.C. § 504(g). Judicial review thus involves two levels of inquiry. First, the Court must decide whether the ALJ applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999). Second, the Court must decide whether the ALJ's decision was supported by substantial evidence. Id.

The substantial evidence threshold is "not high"; in fact, the Supreme Court has defined it as "more than a mere scintilla"—"[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct 1148, 1154 (2019) (citation and internal quotation marks omitted). This standard is "very deferential" to the Commissioner and allows a court to reject the ALJ's findings "only if a reasonable fact finder would have to conclude otherwise," Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation omitted) (emphasis in original), as "it is up to the agency, and not [the reviewing] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). Therefore, the Court is barred from substituting its own judgment for that of the Commissioner, even if it might understandably have reached a different result upon a de novo review. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Koffsky, 26 F. Supp. 2d at 478 (citing Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991)).

A claimant's RFC is the "most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). The RFC is based on all the relevant medical and other evidence in the record, including her credible testimony, objective medical evidence, and medical opinions from treating and consulting sources. 20 C.F.R. § 404.1545(a)(3). Although necessarily informed by the medical evidence in the record, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ[.]" Curry v. Comm'r of Soc. Sec., 855 F. App'x 46, 48 n.3 (2d Cir. 2021).

In formulating a claimant's RFC, the ALJ must "consider" not only severe impairments, but non-severe impairments as well. 20 C.F.R. § 404.1545(a)(2). "This does not mean, however, that the ALJ must include a specific limitation in the RFC corresponding to each of the claimant's non-severe impairments." DuBois v. Comm'r of Soc. Sec., No. 20-CV-8422-BCM, 2022 WL 845751, at *5 (S.D.N.Y. Mar. 21, 2022). Indeed, the regulations themselves state that an impairment that is not severe "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). Nevertheless, it is possible that, "in combination with limitations imposed by an individual's other impairments, the limitations due to . . . a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do." SSR 96-8p, 1996 WL 374184 at *5. Therefore, in formulating the RFC, the ALJ must consider even those "non-severe impairments that would not, standing alone, require the analysis to proceed past step two." DuBois, 2022 WL 845751, at *5; cf. Rousey v. Comm'r of Soc. Sec., 285 F. Supp. 3d 723, 740–41 (S.D.N.Y. 2018) ("Even where "substantial evidence supports the ALJ's finding that [a claimant's] mental impairment was nonsevere, it would still be necessary to remand . . . for further consideration [where] the ALJ failed to account [for the claimant's]

mental limitations when determining her RFC.") (quoting Parker–Grose v. Astrue, 462 F. App'x. 16, 18 (2d Cir. 2012) (summary order)).

As to the evaluation of medical evidence, for claims filed on or after March 27, 2017—as is the case here—the ALJ need not "defer" nor "give any specific evidentiary weight, including controlling weight," to any particular medical opinion or prior administrative finding. 20 C.F.R. § 404.1520c(a). Instead, the ALJ must assess the "persuasiveness" of a given opinion or finding in light of its supportability, consistency, the relationship of the medical source and the claimant, the source's specialization in a relevant medical field, and other factors that tend to either support or contradict the opinion or finding. Id. §§ 404.1520c(c)(1)-(5). Of these, supportability and consistency are the most important factors, and are the only ones the ALJ is required to discuss when deciding whether an opinion or prior administrative finding is persuasive. Id. § 404.1520c(b)(2); see also Young v. Kijakazi, No. 20-CV-03604-SDA, 2021 WL 4148733, at *9 (S.D.N.Y. Sept. 13, 2021). Regardless of how many medical source statements the ALJ receives or the weight he chooses to assign them, the task of formulating a claimant's RFC is reserved to the ALJ alone. See Camille v. Colvin, 652 F. App'x 25, 29 n.5 (2d Cir. 2016) (summary order) ("An ALJ may accept parts of a doctor's opinion and reject others."). So long as substantial evidence exists in the record to support the ALJ's findings, the district court may not reverse his determination. Koffsky, 26 F. Supp. 2d at 478.

The ALJ's RFC Determination & Evaluation of Dr. Fujiwaki's Opinion

Plaintiff first contends that it was improper for the ALJ to assess "no mental limitations" in his RFC determination.[8] (Pl. Mot. at 15.) She cites no case law nor any statute or

---

[8] The ALJ's RFC determination reads as follows: "After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she is limited to

regulation, however, in support of that argument. And she does not contest the ALJ's finding, at step two, that Ms. Richardson's mental impairments were non-severe. (See generally id. at 14-17.) That said, the Court is aware of, and the Government for its part has cited, case law and regulations that require the ALJ to "consider" all of a claimant's medically determinable impairments in an RFC determination, "including those that are not severe." 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe []' . . . when we assess your [RFC] . . . ."); see also Parker-Grose v. Astrue, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order). Indeed, had the ALJ not "considered" Ms. Richardson's non-severe mental impairments in formulating his RFC determination, even after conducting a thorough analysis of those same impairments at step two, it would constitute legal error and require remand. Coulter v. Comm'r of Soc. Sec., No. 22-CV-1149-RWL, 2023 WL 3346505, at *8 (S.D.N.Y. May 10, 2023) (collecting cases).

There is a distinction, however, between consideration of nonsevere mental impairments in formulating a claimant's RFC and explicitly finding that those impairments translate to, and therefore ought to be included in, the functional limitations embodied in a claimant's RFC. See, e.g., Coulter, 2023 WL 3346505, at *7 ("An ALJ may properly determine that mild limitations found during the Paragraph B analysis do not translate into functional limitations within the RFC. But an ALJ must provide a basis for understanding how they made

---

frequent pushing, pulling and/or reaching overhead with both upper extremities, occasional climbing of ramps and stairs, occasionally balancing, stooping, kneeling, crouching, and crawling, and occasional climbing of ladders, ropes, or scaffolds. She is limited to occasional exposure to unprotected heights and moving machinery parts, and occasional exposure to dust, noxious odors and fumes, poor ventilation, extreme heat and cold, and wetness." (R. 16.)

that determination.")  Here, as the Commissioner points out, the ALJ did just that.  (Comm'r Mot. at 16-19.)

As explained in detail above, in the narrative portion explaining his RFC determination, ALJ Feuer acknowledged that that Appeals Council had remanded the case to further examine Ms. Richardson's mental impairments, before discussing consultative examiner Dr. Fujiwaki's opinion—which assessed several "moderate" mental impairments—and explaining why he found it "unpersuasive."  (R. 19.)  The ALJ determined that Dr. Fujiwaki's opinion appeared to rely on the claimant's subjective reports, and could not be reconciled with her "treatment records," which almost invariably indicated minimal evidence of treatment for her alleged mental impairments (no psychotropic medication and no follow-ups on referrals to psychiatric care), PHQ-9 examinations that suggested only mild to minimal depression, and the claimant's testimony that she regularly read, participated in bible classes, and attended church.  (R. 19.)  In the same narrative portion, the ALJ also discussed—and credited—the opinion of state agency consultant L. Serbonich, Psy.D, that Ms. Richardson's depression was non-severe, finding that it comported with the record.  (Id. ("Medical records from prior to the established onset date regularly reflect no depressed mood, and indicate no mental health treatment, supporting his opinion." (citing, among other things, treatment records from Dr. Daniel Hanono, M.D.)))

Based on these discussions, "this Court can be certain that the ALJ actually considered [Ms. Richardson's] mental issues when addressing her RFC."  Beliana M.C. v. Comm'r of Soc. Sec., No. 21-CV-00464-SALM, 2022 WL 596045, at *9 (D. Conn. Feb. 28, 2022) (internal citation and quotation marks omitted).  Because ALJ Feuer properly considered claimant's non-severe mental impairments, "the fact that he ultimately did not include [] mental

health restrictions [] in the RFC was not error." DuBois, 2022 WL 845751, at *7; see also Vasquez v. Berryhill, 16-CV-6707-AJP, 2017 WL 1592761, at *19-22 (S.D.N.Y. May 1, 2017) (declining to remand where ALJ did not include limitations attributable to claimant's non-severe impairments in RFC when claimant failed to show any functional limitations stemming from those impairments).

Plaintiff next argues that the ALJ improperly discounted consultative examiner Dr. Fujiwaki's medical opinion, which she contends was based on "an observable in-person examination" and not, as the ALJ claimed, on Ms. Richardson's "subjective reports." (Pl. Mot. at 16.)  This protest, however, betrays a fundamental misunderstanding of the law, because the Court's task "is limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it may not reweigh evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than one interpretation." Almodovar v. Berryhill, No. 17-CV-8902-BCM, 2019 WL 1313883, at *7 (S.D.N.Y. Mar. 22, 2019) (citing Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)).  In particular, the ALJ's assessment that Dr. Fujiwaki's opinion "appears based on the claimant's subjective reports" and was otherwise inconsistent with Ms. Richardson's treatment records is adequately supported by the "substantial evidence" standard.  Dr. Fujiwaki himself noted that "[t]he results of [his] mental status evaluation are not consistent with the claimant's vocational history" of having worked as a fraud investigator for twenty years. (R. 595.)  Moreover, the ALJ permissibly found his opinion "inconsistent" with the lack of psychiatric treatment and medication as evidenced by her treatment records during the relevant period, as well as her PHQ-9 questionnaires, which revealed only minimal or mild symptoms of depression, and her testimony and statements of her

daily activities.⁹  (R. 19.)  Nor was it impermissible for the ALJ to credit the opinion of Dr. Serbonich, who reviewed Dr. Fujiwaki's examination findings, including his statement of inconsistency regarding Ms. Richardson's performance of serial 7s, as well as the treatment records of Dr. Hanono, which indicated no depressed mood and no difficulty sleeping.  (R. 19, 121-22.)

At bottom, Plaintiff's argument is that the other evidence in the record could have supported a different outcome.  (Pl. Mot. at 16-17.)  The Court acknowledges that the ALJ could have reached a different conclusion on the medical record, but it must defer to the ALJ's determination when it is supported by substantial evidence—"more than a mere scintilla."  Veino v. Barnhart, 312 F.3d 578, 588-89 (2d Cir. 2002); Biestek v. Berryhill, 139 S. Ct 1148, 1154 (2019).  When the core disagreement is that the ALJ cherry-picked the record to credit or discredit particular medical opinions, and where the record supplies contradictory opinions, it is simply not the Court's role to "reweigh [that] evidence" where," as here, "the evidence is susceptible of more than [one] interpretation."  Rivera v. Comm'r of Soc. Sec., 368 F. Supp. 3d 626, 642 (S.D.N.Y. 2019).  As the Commissioner notes, the types of evidence on which the ALJ relied—mental status examination findings, lack of psychiatric treatment or medication, activities of daily living, and Plaintiff's statements about her own abilities—were appropriate for

---

⁹ Separately, "the SSA and the courts have long recognized the dangers of over-reliance on the results of a single examination by a consultative source, especially 'in the context of mental illness where . . . a one-time snapshot of claimant's status may not be indicative of her longitudinal mental health.'"  DuBois, 2022 WL 845751, at *7 n.9 (quoting Estrella v. Berryhill, 925 F.3d 90, 98 (2d Cir. 2019)).  And even if treatment notes are available, "consultative examiners typically do not have access to them, and consequently must 'rely[] in meaningful part on the claimant's subjective reports and anomalous presentation, rather than a full knowledge of the longitudinal nature of the claimant's impairments.'"  Id. (quoting Knief v. Comm'r of Soc. Sec., No. 20-CV-6242-PED, 2021 WL 5449728, at *9 (S.D.N.Y. Nov. 22, 2021)).

the ALJ to consider.  (Comm'r Mot. at 19-24.)  Because "this Court cannot say that <u>no</u> reasonable factfinder could have reached the ALJ's conclusions about [Plaintiff's] RFC . . . this Court must affirm the findings."  <u>Herrera v. Comm'r of Soc. Sec.</u>, No. 20-CV-7910-KHP, 2021 WL 4909955, at *11 (S.D.N.Y. Oct. 21, 2021) (citing <u>Brault</u>, 683 F.3d at 448) (emphasis added).

CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is denied, and the Commissioner's motion for judgment on the pleadings is granted.  This Memorandum Order resolves docket entry nos. 12 and 14.  The Clerk of Court is respectfully directed to enter judgment in favor of the Defendant, and close case no. 21-cv-11146.

SO ORDERED.

Dated: March 29, 2024
         New York, New York

<u>/s/ Laura Taylor Swain</u><br>
LAURA TAYLOR SWAIN<br>
Chief United States District Judge